**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

Thomas J. Osborne                             :

       Plaintiff,                             :       Hon. Joseph H. Rodriguez

      v.                                          :       Civil Action No. 12-2393

Aetna,                                             :       **Memorandum Opinion & Order**

       Defendant.                          :
_____

This matter is before the Court on Defendant Aetna's Motion for Summary Judgment [Dkt. 8].  Plaintiff Thomas J. Osborne brings this action pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1132(a)(1)(B), based on his claim that he was improperly denied short-term disability benefits.  The Court has considered this motion without oral argument pursuant to Fed. R. Civ. P. 78, and will grant the motion for the reasons stated herein.

## Background

This case arises from Defendant Aetna's denial of short-term disability benefits to Plaintiff, Thomas J. Osborne.  Specifically, Mr. Osborne has been employed as a Security Guard for Hot on Time d/b/a Camuto Group LLC since January 30, 2006.  (AR 093.)[1] Mr. Osborne last worked on December 18, 2009, as Mr. Osborne claims that he was "disabled from any gainful employment as of December 19, 2009" due to pain in his lower back and hips that awakens him "all night."  (AR 164-65; AR 424; Pl. Br. Opp'n.) Accordingly, Mr. Osborne applied for short-term disability benefits under Hot on Time d/b/a Camuto Group LLC's employee welfare benefit plan, which is governed by ERISA

_____

[1] Citations to the Administrative Record are herein noted as ("AR XXX").

and Aetna and provides short-term disability coverage for all full-time employees.  (AR

001-055.)  Specifically, the short term disability plan provides:

> You will be considered disabled while covered under this
> short term disability plan on the first day you are disabled as
> a direct result of a significant change in your physical or
> mental condition and you meet all of the following
> requirements:
>
> - You must be covered by this Plan at the time you
>   become disabled;
> - You must be under the regular care of a **physician.**
>   You will be considered under the care of a **physician**
>   up to 31 days before you have been seen and treated in
>   person by a **physician** for the **illness, injury,** or
>   pregnancy-related condition that caused the
>   disability; and You must meet the short term
>   disability test of disability (see the *Test of Disability*
>   section).

(AR 036.) (emphasis in original.)  The "Test of Disability" section provides:

> You meet the **test of disability** if you are not able to
> perform the **material duties** of your **own occupation**
> because of an **illness** or **injury**, or because of a pregnancy-
> related condition.  You are not performing the **material
> duties** of your **own occupation** if:
>
> - You are only performing some of the **material
>   duties** of your **own occupation**; and
> - Your income is 80% or less of your **predisability
>   earnings** solely because of an **illness, injury** or a
>   disabling pregnancy-related condition

(AR 036) (emphasis in original.)  Additionally, the plan includes a section entitled

"When Short Term Disability Benefit Eligibility Ends" and provides, in relevant part:

> You will no longer be considered disabled nor eligible for
> weekly benefits when the first of the following occurs:
>
> - The date you no longer meet the short term disability
>   test of disability as determined by **Aetna**;
> - The date you are no longer under the regular care of a
>   **physician**;

- The date you fail to provide proof that you meet the short term disability test of disability . . .
- the date you refuse any treatment recommended by your attending **physician** that, in **Aetna's** opinion, would cure, correct, or limit your disability . . ..

(AR 037) (emphasis in original.)

By way of letter dated January 21, 2010, Aenta informed Mr. Osborne that Aetna certified his benefits claim from December 19, 2009 through December 30, 2009. (AR 180-81.) Aetna informed Mr. Osborne that Aetna would not consider his entitlement to benefits beyond December 30, 2009, until Aetna "receive and review additional medical information." (AR 180-81.) Aetna informed Mr. Osborne that "it is your responsibility to provide additional updated medical information. If we do not receive any additional medical information, your case will remain closed." (AR 180-81.) During a phone conversation with Aetna on the same day, Mr. Osborne indicated that he had not seen his family physician, Dr. Joseph DiLisi, since his first visit on December 7, 2009 and that he had not seen an orthopedic specialist because he does not have medical insurance. (AR 106.) Aetna informed Mr. Osborne that he "needs to be treating with a physician for [his short-term disability] claim to be supported."[2] (AR 106.)

On January 29, 2010, Aetna received two office visit / progress notes. The first, dated December 7, 2013, reflects Dr. DiLisi's handwritten notes of Mr. Osborne's visit to Dr. DiLisi. (AR 219; AR 112.) These handwritten notes indicate Mr. Osborne's complaints of back pain and reference a disability. (AR 219.) In his Attending Physician

---

[2] Additionally, during this phone call and by way of the January 21, 2010 letter, Aetna noted that Mr. Osborne applied for benefits under the New Jersey State Disability Plan ("NJSD") and that Mr. Osborne's employer provides for integration with the NJSD, which provides Aetna the right to offset any short-term disability benefit by the amount received by NJSD. (AR 180-81) Aetna advised Mr. Osborne that his New Jersey State Disability Plan weekly benefit is 66 2/3% of pre-disability earnings as compared to the plan, which provides a weekly benefit of 60% of his pre-disability earnings for 26 weeks – as such, Mr. Osborne's STD benefits would not likely be payable after the offsets are accounted for in the benefit amount. (AR 29, 106, 180-81).

Statement dated January 2, 2010, Dr. DiLisi indicated that he saw Mr. Osborne on December 7, 2009 and that Mr. Osborne was disabled due to "failed back surgery."  (AR 426-27.)  Specifically, Dr. DiLisi noted that Mr. Osborne underwent a lumbar fusion surgery in 1967 and has experienced "severe" and "persistent" low back pain since 1967. (AR 426.)  Under the section asking for the doctor's "objective findings that substantiate impairment," Dr. DiLisi wrote "severe back pain and radiates into legs."  (AR 427.)  Dr. DiLisi noted that Mr. Osborne would need to be absent from work due to a disability starting December 7, 2009 through December 31, 2010.  (AR 426.)

Second, Mr. Osborne submitted a consultation letter from orthopedic specialist Dr. Steven J. Valentino to Dr. DiLisi, dated December 17, 2009.  (AR 112; AR 262.)  At Dr. DiLisi's request, Dr. Valentino "performed an initial spine surgery and pain management consultation on Thomas Osborne."  (AR 262.)  Dr. Valentino's letter describes Mr. Osborne's complaints of severe back and leg pain.  (AR 262.)  Dr. Valentino's letter recounts Mr. Osborne's history of significant injury in 1967, for which he underwent a lumbar fusion "utilizing bone from the right posterior iliac crest," was "treated with a body cast for several months, and had neurologic problems about the lower extremities with bladder incontinence," for which he "underwent cystoscopy with improvement in bladder function."  (AR 262-63.)  Dr. Valentino describes Mr. Osborne's current position as a security guard in a warehouse, "which involves prolonged standing and walking, which aggravate his condition" and notes that "[h]e does not feel as though he can continue to work due to increasing symptoms."  (AR 263.)

Dr. Valentino performed a physical exam of Mr. Osborne and reviewed Dr. Osborne's medical history, including an EMG from September 29, 2001 and an MRI of

the lumbar spine.[3] (AR 263-64.) Dr. Valentino diagnosed Mr. Osborne with "residuals of L1 burst fracture with neurologic involvement status post decompression and fusion, lumbosacral radiculopathy, aggravation of lumbar degenerative disc disease" for which he discussed with Mr. Osborne "the role of a further work up, conservative care, pain management techniques and the indications and risks involved with surgery." (AR 264.) However, Dr. Valentino noted that "[a]t this point, [Mr. Osborne] is not interested in pursuing treatment." (AR 264.) Dr. Valentino wrote to Dr. DiLisi, "I agree with you that he is disabled from gainful employment, and I will plan to proceed with short-term disability." (AR 264.)

However, notwithstanding these submissions, by way of letter correspondence dated July 15, 2010, Aetna upheld its denial of continued short-term disability benefits, finding again that "there was not enough medical information to further support [the] disability claim." (AR 183.) By way of letter dated November 18, 2010, Mr. Osborne, with assistance of counsel, initiated an appeal of Aetna's decision. (AR 215.) In support of this letter, Mr. Osborne submitted various medical records dating back to approximately 2000, which were maintained by his family physician, Dr. DiLisi.[4] (AR 215 – 397.)

By way of letter addressed to Mr. Osborne's counsel and dated January 14, 2011, Aetna informed Mr. Osborne that his appeal would be placed on hold because the appeal

---

[3] Dr. Valentino's letter indicates that he "reviewed an EMG from 9/29/01 showing moderately severe chronic right L5 radiculopathy and sever chronic right S1 radiculopathy" as well as an "MRI of the lumbar spine showing a marked decompression deformity at L1 resulting in angulation along the scoliotic curve. There is compression of the left L4 nerve root with degenerative changes, and enhancement of the right L3 nerve root. Bulging is noted at L4-5, and narrowing of the thecal sac is noted at T12-L1." (AR 263.)

[4] These records include approximately 180 pages of handwritten progress notes, lab reports, various physician letters, and other doctors' reports. (AR 215 – 397.)

included "a review by an Independent Physician Consultant specializing in Occupational Medicine" who, despite attempting to contact Dr. DiLisi on three occasions, was "unable to speak directly with Dr. Joseph DiLisi." (AR 188.) Accordingly, Aetna informed Mr. Osborne that they were "forwarding the applicable report to Dr. DiLisi; and have invited him to either comment as the review findings and/or speak to our consultant in an attempt to accomplish the peer to peer discussion and not agree with our consultant's conclusion." (AR 188; 190-91.) Aetna faxed the report to Dr. DiLisi and requested that Dr. DiLisi respond by January 28, 2011; accordingly, Aetna put Mr. Osborne's review on hold until January 28, 2011. (AR 188.)

The independent physician reviewer, Dr. Russel J. Green, Diplomate, American Board of Preventative Medicine, Occupational Medicine, reviewed all of the records in Mr. Osborne's file and completed the report that he faxed to Dr. DiLisi. (AR 206-213.) Dr. Green's report described Mr. Osborne's records and reviewed notable incidents throughout Mr. Osborne's medical history, including his experiences with hypertension, hyperlipidemia, and back pain. (AR 208.) Dr. Green noted that "[i]n the medical record from Dr. DiLisi, I can find only three references to low back pain from 2000 forward to 2010 and those were on the last three visits in 2009 and 2010." (AR 209.) Dr. Green noted Mr. Osborne's history of spinal injury dating to the 1967 accident and subsequent spine fusion and mentioned a notation that "there had been no problems to the lower back until mid-2001" when Mr. Osborne was seen by Dr. David Bundens for issues related to low back pain and bilateral leg pain. (AR 209.)

Dr. Green found that based on the documentation, there "are no functional impairments for the dates 12/31/09 through 12/28/10 that would preclude Mr. Osborne from performing the essential functions as a Security Officer, falling within a sedentary

physical demand level." (AR 211.)  Dr. Green noted that while "there is no doubt that Mr. Osborne has degenerative changes in the lumbar spine as evidenced on imaging" and Mr. Osborne's medical history reflects back issues dating to 1967, this "did not translate to long-term problems for Mr. Osborne, and he had a successful career in several occupations with the most recent being that as a Security Officer." (AR 211.)  Dr. Green concluded that "Dr. DiLisi's position that Mr. Osborne is fully disabled again is not consistent with his own medical record," as in Dr. Green's opinion, "when all issues are taken into account, Mr. Osborne does not have a functionally impairing condition or conditions and therefore, there is no support for that from the time 12/31/09 to 12/28/10." (AR 212.)  Dr. Green concluded that based on the information available, Mr. Osborne "is able to function within his own job which is described to fall within a sedentary physical demand level." (AR 212.)

By way of letter dated February 16, 2011, Aetna informed Mr. Osborne's counsel that Aetna reviewed Mr. Osborne's appeal, but decided to uphold the original denial of short-term disability benefits to Mr. Osborne. (AR 200.)  Specifically, Aetna noted that Mr. Osborne was employed as a Security Officer, which is classified as having a sedentary physical demand level requirement, and that as of his disability date of December 19, 2009, he was diagnosed with chronic pain syndrome. (AR 200.)  The letter indicates that Mr. Osborne's file was reviewed by an independent peer physician; however, "a peer-to-peer physician conversation was not able to be completed between the physician reviewer and Dr. DiLisi" because, as of February 16, 2011, Dr. DiLisi did not return the physician's phone calls or respond to the faxed report of January 14, 2011. (AR 202.)  Based on Mr. Osborne's file, the physician reviewer found that "the records failed to support functional restrictions of such severity that prevented [Mr. Osborne]

from performing the material duties of his sedentary occupation during the period under review" and that "Mr. Osborne was capable of performing minimal demand level activity." (AR 202.) Accordingly, Aetna upheld its denial of short-term disability benefits because it determined that based on its review of the submitted documentation, "there was insufficient medical evidence to support Mr. Osborne's continued disability, as of December 31, 2009 and beyond." (AR 202.)

On April 23, 2012, Mr. Osborne initiated this action in this Court pursuant to Section 502(a) of ERISA, challenging Aetna's denial of short-term disability benefits.[5] On October 15, 2012, Aetna filed the present Motion for Summary Judgment [Dkt. 8]. For the reasons stated herein, the Court will grant Aetna's Motion.

## Jurisdiction

This Court has subject matter jurisdiction over this ERISA action pursuant to 28 U.S.C. § 1331. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), a court shall grant summary judgment if, viewing the facts most favorable to the non-moving party, the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Cleotex Corp. V. Catrett, 477 U.S. 317, 322 (1986)); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. Anderson v.

---

[5] The Complaint seeks relief in the form of "applicable long term disability benefits." (Compl.) However, the record does not indicate that Mr. Osborne applied for long-term disability benefits, as this dispute seems to hinge on Aetna's denial of short-term disability benefits.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the

governing substantive law, a dispute about the fact might affect the outcome of the suit.

Id.  In determining whether a genuine issue of material fact exists, the court must view

the facts and all reasonable inferences drawn from those facts in the light most favorable

to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).  In deciding the merits of a

party's motion for summary judgment, the court's role is not to evaluate the evidence

and decide the truth of the matter, but to determine whether there is a genuine issue for

trial.  Anderson, 477 U.S. at 249.

## ERISA Standard

Congress enacted ERISA to "protect . . . the interests of participants in employee

benefit plans and their beneficiaries" by establishing regulatory requirements for

employee benefit plans and "by providing for appropriate remedies, sanctions, and

ready access to the Federal courts."  29 U.S.C. § 1001(b); Aetna Health Inc. v. Davila,

542 U.S. 200, 208, 124 S. Ct. 2488, 2495, 159 L. Ed. 2d 312 (2004) (quoting same).

Accordingly, under ERISA, a participant or beneficiary may bring a civil action "to

recover benefits due to him under the terms of his plan, to enforce his rights under the

terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[6]

29 U.S.C. § 1132(a)(1)(B).

A Court typically reviews such actions under a *de novo* standard, unless the terms of

the plan "give[ ] the administrator or fiduciary discretionary authority to determine

---

[6]  In such actions, the plaintiff / claimant must establish his or her entitlement to benefits.  See
Mitchell v. Eastman Kodak Co., 113 F.3d 433, 439 (3d Cir. 1997) (explaining that "a claimant
bears the burden of demonstrating that he qualifies for benefits").

eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber Co.</u>

<u>v. Bruch</u>, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989). In cases in

which the administrator or fiduciary has such discretionary authority, the Court applies

a "deferential standard of review." <u>Id.</u> at 111. The United States Court of Appeals for

the Third Circuit has described this deferential review as an arbitrary and capricious

standard, under which the District Court may "overturn a decision of the plan

administrator only if it is without reason, unsupported by substantial evidence or

erroneous as a matter of law."[7]  <u>Doroshow v. Hartford Life & Acc. Ins. Co.</u>, 574 F.3d

230, 234 (3d Cir. 2009) (citing <u>Abnathya v. Hoffman-La Roche, Inc.</u>, 2 F.3d 40, 45 (3d

Cir. 1993)). Here, courts "defer to an administrator's findings of facts when they are

supported by 'substantial evidence,' which we have 'defined as such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion.'" <u>Fleisher v.</u>

<u>Standard Ins. Co.</u>, 679 F.3d 116, 121 (3d Cir. 2012) (quoting <u>Soubik v. Dir., Office of</u>

<u>Workers' Comp. Programs</u>, 366 F.3d 226, 233 (3d Cir.2004)).

  Accordingly, the Third Circuit has recently noted that "[a]n administrator's

interpretation is not arbitrary if it is reasonably consistent with unambiguous plan

language"; however, "[w]hen a plan's language is ambiguous and the administrator is

authorized to interpret it, courts must defer to this interpretation unless it is arbitrary or

capricious." <u>Fleisher</u>, 679 F.3d at 121 (internal citations omitted). "The determination

---

[7] Though the Supreme Court described this deferential review as an "abuse of discretion" standard in <u>Metropolitan Life Ins. Co. v. Glenn</u>, 554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), the Third Circuit has noted that in the ERISA context, the "arbitrary and capricious standard" and "abuse of discretion standard" are "practically identical." <u>Estate of Schwing v. The Lilly Health Plan</u>, 562 F.3d 522, 526 n.2 (3d Cir. 2009).

of whether a term is ambiguous is a question of law.  A term is ambiguous if it is subject to reasonable alternative interpretations."  Id.  (citation omitted).

The Supreme Court of the United States has noted that when conducting the "deferential review" of a benefits denial made by an administrator or fiduciary invested with discretionary authority, the reviewing court must consider whether the plan administrator operated under a conflict of interest.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108, 128 S. Ct. 2343, 2346, 171 L. Ed. 2d 299 (2008).  In this context, a conflict of interest exists when "a plan administrator both evaluates claims for benefits and pays benefits claims."  Id.  at 112.  Accordingly, the Glenn Court directed reviewing courts to consider this evaluator / payor conflict of interest as one of several different considerations in determining whether there was an abuse of discretion.[8]  Id.  at 115-17.  The Court noted that "the significance of this factor will depend upon the circumstances of the particular case."  Id.  at 108.

## Analysis

As a preliminary matter, the Court notes that the plan at issue provides that Aetna is "a fiduciary with complete authority to review all denied claims for benefits under this Policy" and "[i]n exercising such fiduciary responsibility, [Aetna] shall have discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein."  (AR

---

[8] The Court declined to create special rules focused on the evaluator/payor conflict, noting that "[b]enefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts . . . for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review."  Glenn, 544 U.S. at 116.

025.)  Accordingly, as this case concerns an administrator with such discretionary authority, the Court may overturn Aetna's decision upholding the denial of short-term benefits to Mr. Osborne "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  Doroshow v. Hartford Life & Acc. Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009) (citing Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).

Here, Mr. Osborne argues that Aetna's decision was arbitrary and capricious because the record is unsupported by substantial evidence.  (Pl.'s Br. Opp'n.) Specifically, Mr. Osborne argues that Aetna was unable to properly investigate Mr. Osborne's benefits claim because Aetna's doctors did not physically examine him and relied only upon Mr. Osborne's file; in contrast, Mr. Osborne emphasizes the opinions of Dr. DiLisi, Mr. Osborne's treating physician, and Dr. Valentino, who also made his determination after a physical examination of Mr. Osborne.  (Pl.'s Br. Opp'n.)  Mr. Osborne stresses that both Drs. DiLisi and Valentino determined that Mr. Osborne was unable to perform his job duties.  (Pl.'s Br. Opp'n.)  Further, Mr. Osborne argues that Aetna's decision is subject to a higher level of scrutiny under the "sliding scale approach" because Aetna hired an "independent examiner" and "does in fact reap a benefit in denying claims."  (Pl.'s Br. Opp'n.)

Notwithstanding these arguments, Mr. Osborne has failed to demonstrate that Aetna's decision was arbitrary and capricious.  Here, even though Dr. Green's opinion regarding Mr. Osborne's ability to work differed from the opinions of Drs. DiLisi and Valentino, the Supreme Court has made clear that an ERISA plan administrator is not required to defer to those "treating physicians," as such a "treating physician rule" does not apply in the ERISA context.  See Black & Decker Disability Plan v. Nord, 538 U.S.

822, 834, 123 S. Ct. 1965, 1972, 155 L. Ed. 2d 1034 (2003) (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").  See also, e.g., Bluman v. Plan Adm'r & Trustees for CNA's Integrated Disability Program, 491 Fed. Appx. 312, 315-16 (3d Cir. 2012) (finding that the plaintiff failed to demonstrate that denial of benefits was arbitrary and capricious because even though the administrator's doctor's opinion diverged from the opinions of plaintiff's treating physicians, this "professional disagreement" did not prevent the administrator from relying on its independent doctor's report).  Similarly, Dr. Green's failure to physically examine Mr. Osborne does not sufficiently call into question his conclusions regarding Mr. Osborne's abilities and Aetna's ultimate decision to deny continued short-term disability benefits to Mr. Osborne.[9]  Accordingly, on this narrow review, the Court is unable to conclude that the administrative record does not amount to "relevant evidence as a reasonable mind might accept as adequate to support [Aetna's] conclusion" that Mr. Osborne did not advance sufficient medical evidence to support his claim for short-term disability benefits.  See Fleisher, 679 F.3d at 121 (internal quotation omitted).

---

[9] Here, the record reflects Dr. Green's multiple efforts to contact Dr. DiLisi to engage in a peer-to-peer conversation about Mr. Osborne's condition; however Dr.DiLisi never responded to Dr. Green's phone calls and did not respond or comment on Dr. Green's report.  Dr. Green's report reflects this effort in addition to detailing his review all of the medical information that Mr. Osborne submitted in support of his claim.  Here, the Court likely cannot conclude that it was unreasonable for Aetna to credit Dr. Green's report in this case for the sole reason that Dr. Green did not perform a physical examination of Mr. Osborne.  See e.g. Bluman, 491 Fed. Appx. at 316 (noting that the plaintiff did not demonstrate that the administrator's independent physician should have examined the plaintiff instead of reviewing his medical records").

Moreover, Plaintiff's arguments regarding the "sliding scale approach" to the conflict of interest are misplaced, as following the Supreme Court's decision in Metropolitan Life Ins. Co. v. Glenn,  554 U.S. 105, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008), this approach no longer applies to these claims.[10]  Specifically, the Third Circuit has articulated that "in light of Glenn, our 'sliding scale' approach is no longer valid. Instead, courts reviewing the decisions of ERISA plan administrators . . . should apply a deferential abuse of discretion standard of review across the board and consider any conflict of interest as one of several factors in considering whether the administrator or the fiduciary abused its discretion."  Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009).  Here, viewed in light of the record before the Court as described herein, the Court cannot conclude that the inherent evaluator / payor conflict of interest rendered the administrator's decision an abuse of discretion.

## Conclusion

Because the record before the Court does not indicate that Aetna's decision was "arbitrary and capricious," the Court will uphold Aetna's decision to discontinue Mr. Osborne's short-term disability benefits.  Thus,

IT IS on this 19th Day of June, 2013, hereby ORDERED that Defendant's Motion for Summary Judgment [Dkt. 8] is GRANTED.


                                          */s/ Joseph H. Rodriguez*
                                          Hon. Joseph H. Rodriguez
                                          UNITED STATES DISTRICT JUDGE

---

[10] Prior to Glenn, courts in this Circuit "adjusted the standard of review using a 'sliding scale' in which the level of deference we accorded to a plan administrator would change depending on the conflict or conflicts of interest affecting plan administration."  Estate of Schwing v. The Lilly Health Plan, 562 F.3d 522, 525 (3d Cir. 2009); Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 392 (3d Cir. 2000) (adopting and describing sliding scale approach).